**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

FISK ELECTRIC COMPANY                         CIVIL ACTION

VERSUS                                        NO. 15-2315

DQSI, L.L.C., ET AL.                          SECTION "B"(3)

<u>ORDER AND REASONS</u>

For the reasons set forth below, **IT IS ORDERED** that Defendants' Opposed Motion to Dismiss is **DENIED without prejudice**; Plaintiff's request for leave to amend is **GRANTED**, subject to conditions noted *infra*; Defendants' Motion to Enforce Settlement Agreement is **DENIED**; and Defendants' Motion for Summary Judgment is **DENIED**. (*See* Rec. Docs. 16, 24, 27, 30).

I.     FACTS AND PROCEDURAL HISTORY

Plaintiff, Fisk Electric Company ("Fisk"), contracted to perform electrical work on July 29, 2010 with Defendant, DQSI, L.L.C. ("DQSI"), the prime contractor with the United States Army Corps of Engineers ("USACE"), for a storm proofing project (the "Project"). (Rec. Doc. 1 at 3). Prior to that date, but in contemplation of the Project, Defendant Western Surety Company ("Western") issued a Miller Act payment bond on the Project on behalf of DQSI. (Rec. Doc. 1 at 3). The original completion date for the Project under Fisk and DQSI's contract was July 12, 2011, with a maximum completion date of August 1, 2011; however, because of significant delays that were not caused by Fisk, the

completion date was prolonged another 464 days. (Rec. Doc. 1 at 3).

Under the terms of Fisk's contract with DQSI, Fisk was permitted to assert monetary claims for unforeseen delays not caused by the subcontractor. (Rec. Doc. 1 at 3). As a result of the delayed completion date, Fisk alleges that it incurred significant additional expenses, which it invoiced to DQSI, but was not paid. (Rec. Doc. 1 at 4). Fisk subsequently sent a demand letter to DQSI and Western on March 27, 2013, and thereafter met with DQSI on several occasions in 2013 in an effort to resolve the claims amicably. (Rec. Doc. 1 at 5).

After failure to resolve Fisk's claims, Fisk filed suit against DQSI and Western pursuant to 40 U.S.C. § 3131, et seq. (the "Miller Act") and for breach of contract, in the action entitled *Fisk Electric Co. v. DQSI, L.L.C.*, No. CV-13-6157 (E.D. La. filed Oct. 15, 2013). Fisk and DQSI mediated this case on April 17, 2014 and entered into the Memorandum of Agreement, which was later enforced by this Court on September 17, 2014. (Rec. Doc. 1 at 5, 7; Rec. Doc. 1-1). In addition to other conditions for Fisk releasing its claims, the parties agreed that DQSI would submit a Request for Equitable Adjustment ("REA") to the USACE for the delay damages alleged by Fisk, as Fisk would not be permitted to submit its claims directly as a

subcontractor, but must rely on its contractor to adequately present them. (Rec. Doc. 1 at 5).

Fisk alleges that the ability to pursue the delay damages from USACE was imperative in settling, and settlement would not have been agreed upon in the absence of the promise by DQSI to submit the REA. (Rec. Doc. 1 at 6). Fisk alleges that it confronted DQSI prior to filing the original lawsuit and again at mediation regarding concerns that DQSI may have waived its rights to seek additional compensation from the USACE for delays, but relied on DQSI's representations that it had not. (Rec. Doc. 1 at 6). Fisk prepared its REA with supporting documentation pursuant to the Memorandum of Agreement and DQSI ultimately, pursuant to this Court's order enforcing that agreement, submitted an REA to the USACE, which may or may not be identical to what Fisk prepared. (Rec. Doc. 1 at 6-7).[1] Thereafter, Fisk and DQSI finalized their settlement with the Mutual Release and Compromise of Claims, executed on December 11, 2014 (this document and the Memorandum of Agreement are collectively referred to as "the Agreements" herein). (Rec. Doc. 1 at 7; Rec. Doc. 1-2).

On February 13, 2015, Fisk received correspondence from the USACE via DQSI to suggest that, contrary to the alleged assurances from DQSI that it had not already received delay

---

[1] Fisk alleges that it has not seen a copy of the REA that DQSI submitted to the USACE. (Rec. Doc. 1 at 7).

payment that would involve Fisk's delay claims, all claims for the delays had been paid and the rights of DQSI's subcontractors had been waived. (Rec. Doc. 1 at 7; Rec. Doc. 1-3). Fisk subsequently met with USACE and DQSI on March 31, 2015, and alleges that USACE made clear that any claims for damages related to project delays had previously been paid and addressed in connection with the original contract modifications requested by DQSI such that Fisk's rights to seek additional compensation had been waived. (Rec. Doc. 1 at 8). Fisk alleges that, at the time of mediation and settlement, DQSI knew that it had waived Fisk's rights but assured Fisk that it had not. (Rec. Doc. 1 at 8). Fisk further alleges that it agreed to settle based on these representations. (Rec. Doc. 1 at 8).

Fisk filed the instant suit on June 25, 2015, seeking rescission of the release on the basis of fraud and damages for breach of contract, and additionally adopted all of the claims from its original lawsuit. (Rec. Doc. 1 at 2). Jurisdiction in this matter is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332 and is also proper pursuant to 28 U.S.C. § 1352 and 28 U.S.C. § 1367(a), insomuch as Fisk requests relief under the Miller Act and all state law claims arise out of the same case or controversy. (Rec. Doc. 1 at 2).

## II.    MOTION TO DISMISS STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Such a motion is rarely granted because it is viewed with disfavor. *See Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997) (quoting *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982)).

When reviewing a motion to dismiss, courts must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Gonzales v. Kay, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)) (internal quotation marks omitted). The Supreme Court in *Iqbal* explained that *Twombly* promulgated a "two-pronged approach" to determine whether a complaint states a plausible claim for relief. *Iqbal*, 129 S. Ct. at 1950. First, courts must identify those pleadings that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id.

Legal conclusions "must be supported by factual allegations." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949.

Upon identifying the well-pleaded factual allegations, courts "assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Id.* at 1950. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The plaintiffs must "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## III.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although the Court must consider the evidence

with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas*, 139 F.3d 532, 536 (5th Cir. 1998).

The moving party bears the initial responsibility of informing the district court of the basis for its motion. *Celotex*, 477 U.S. at 323. The movant must point to "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (citing Fed. R. Civ. P. 56). If and when the movant carries this burden, the nonmovant must then go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[W]here the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. . . . Only when 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party' is a full trial on the merits warranted." *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616 (5th

Cir. 1994). Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993).

## IV.   DISCUSSION

Defendants divide their request for relief into four main arguments, all of which rely on the validity of the Agreements. Defendants' first two arguments must prevail, to an extent, for the same underlying reason – the validity of the Agreements forms the nucleus of this lawsuit, and Plaintiff has not yet met the particularity requirement for pleading so as to show that those Agreements should be null for fraud. Defendants' latter two arguments must fail due to the absence of the Court's authority to enforce the Agreements and the presence of genuine issues of material fact.

### A. Plaintiff's Fraud Claim Does Not Necessitate Dismissal

In order to survive Defendants' motion to dismiss, Plaintiff must make a plausible claim for fraud, while adhering to the heightened federal pleading standards. As will be discussed, Plaintiff has alleged a plausible claim, but has failed to meet the particularity requirement under the federal rules. Nonetheless, dismissal with prejudice is not the appropriate action for this Court to take.

### 1. Plaintiff's Fraud Claim is Facially Plausible

The enforceability or validity of a settlement agreement is determined by federal law when the substantive rights and liabilities of the parties derive from federal law. *Mid-S. Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 389 (5th Cir. 1984) (citations omitted). Because the claims in this case are premised on the Miller Act, federal law governs the validity of the Agreements and thus any fraud claim that might invalidate them. When a settlement agreement is induced by fraud, a court may set it aside and "[t]he essential elements of fraudulent inducement into a settlement are no different from any action on fraud." *In re DEEPWATER HORIZON*, 786 F.3d 344, 362 (5th Cir. 2015) (quoting 15B Am. Jur. 2d Compromise and Settlement § 32 (2014)). Accordingly, Plaintiff must prove:

> (1) a material representation was made;
> (2) the representation was false;
> (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion;
> (4) the representation was made with the intention that it be acted upon by the other party;
> (5) the party acted in reliance on upon the representation; and
> (6) the party suffered injury.

*Id.* at 363 (citing *O'Hare v. Graham*, 455 F. App'x 377, 379 (5th Cir. 2011)).

Plaintiff's complaint provides circumstantial evidence of fraud, though it does not set out these specific elements.[2] For example, Plaintiff makes clear that it settled a claim with Defendant DQSI, allegedly worth over $400,000, for less than $70,000. (Rec. Doc. 1 at 4-5). Allegedly, this settlement was premised on Plaintiff's ability to submit an REA, as indicated by the at length discussion of the REA in the Agreements. (Rec. Doc. 1-1 at 2-3; Rec. Doc. 1-2 at 4-5). Such extensive discussion of the REA, and the agreement to settle for less than one-fourth the amount initially demanded in light of the REA, is circumstantial evidence that Plaintiff may be able to prove the required elements of a fraud claim in the course of litigation. Consequently, dismissal is inappropriate on these grounds because the claim is plausible, merely undeveloped. *See Hogan v. Midland Cnty. Comm'rs Court*, 680 F.2d 1101, 1103 (5th Cir. 1982) ("As [Plaintiff's] complaint alleged facts that if proven would at least arguably entitle him to relief, it was premature for the district court to dismiss the complaint without any development of the factual issues in this case.").

Additionally, the Agreements attached to Plaintiff's Complaint do not bar Plaintiff's fraud claim as asserted by Defendants.[3] At first glance, this Court remarks that it is

---

[2] Nor does it adhere to the pleading requirements, discussed *infra*.
[3] Defendant alleges that "[b]y attaching the [Agreements] into its Complaint, Fisk pled itself out of court in this matter." (Rec. Doc. 16-1 at 7).

unsure precisely what Defendants' argument is, as they merely argue that the attachments to a complaint should be considered part of the complaint for a motion to dismiss, but fail to address why this is dispositive. However, because Defendants later discuss the enforceability of the merger clauses present in the Agreements, the Court finds it appropriate to address those here.[4] This Court holds that such clauses do not bar Plaintiff's ability to bring a claim based on a fraudulent inducement not expressed within the terms of the Agreements, despite stating that there is "no promise, inducement or agreement not expressed herein." (Rec. Doc. 1-2 at 7).

Between the parties to a written agreement, parol evidence is admissible "to show fraud, mistake, illegality, want or failure of consideration, . . . or to show that the writing is only a part of an entire oral contract between the parties." *Scafidi v. Johnson*, 420 So. 2d 1113, 1115 (La. 1982) (quoting *Gulf States Finance Corp. v. Airline Auto Sales, Inc.*, 181 So.2d 36, 38 (La. 1965)); *see also* La. Civ. Code. Art. 1848 (stating

---

[4] The Mutual Release and Compromise of Claims states, in relevant part:
> This Settlement Agreement contains the entire agreement between the Parties hereto, and the terms of this Settlement Agreement are contractual and not a mere recital.
> . . .
> The Parties agree that no promise, inducement or agreement not expressed herein has been made to any of the Parties and further agree that this Settlement Agreement contains the entire agreement between the Parties.

(Rec. Doc. 1-2 at 6-7).

that "evidence may be admitted to prove such circumstances as a vice of consent").[5] Additionally, a merger clause does not *per se* "preclude any parol evidence as to other possible agreements and/or representations between the parties." *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1328 (5th Cir. 1994) (applying Louisiana law). As such, this Court does not believe that the merger clauses prevent Plaintiff from alleging that Defendant DQSI made representations not addressed by the Agreements, in order to prove its claim for fraud. Accordingly, Plaintiff's claim is plausible.

## 2. The Particularity Requirement for Pleading Fraud Necessitates Granting Leave to Amend

Under the federal pleading requirements, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Accordingly, the plaintiff must specify the statements asserted to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent. *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550–51 (5th Cir. 2010). In other words, the plaintiff is required to allege the "who, what, when, where and how" of the events at issue. *Dorsey v. Portfolio*

---

[5] Because the parol evidence rule is substantive, Louisiana law applies, not federal law. *See, e.g.*, *Songcharoen v. Plastic & Hand Surgery Associates, P.L.L.C.*, 561 F. App'x 327, 338 (5th Cir. 2014).

*Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008). Anything less fails to provide defendants with adequate notice of the nature and grounds of the claim. *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) (citing *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994)).

In assessing Plaintiff's Complaint, Defendants are correct to point out that Plaintiff has not adhered to such a standard. Plaintiff has not alleged the "who, what, when, where and how" of the fraudulent acts, but merely states the following: "DQSI at all times represented to Fisk that it had not waived its right to seek additional compensation[,]" "Fisk relied on the representations made by DQSI in agreeing to release DQSI[,]" and "[a]t the time of mediation and settlement, DQSI knew that it had waived Fisk's rights to seek additional compensation for delay damages from USACE, yet it assured Fisk that it had not done so." (Rec. Doc. 1 at 6, 8). Though Plaintiff has satisfied the "knowledge" requirement, which may be alleged generally, Plaintiff's Complaint falls short of explaining who specifically made the representations, what those representations consisted of, when and where they took place, and how they were communicated. Plaintiff's Complaint therefore does not adhere to the federal pleading requirements.

Nonetheless, this Court finds that dismissal with prejudice would be contrary to one of the purposes of the federal pleading

requirements – to put the defendant on notice of the facts and circumstances of the alleged fraud so that the party can prepare a defense. *See* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1296 (3d ed. 2015). Correspondingly, "a plaintiff's failure to meet the specific pleading requirements should not automatically or inflexibility [sic] result in dismissal of the complaint with prejudice to re-filing." *Hart*, 199 F.3d at 248 n.6; *see also Cates v. Int'l Tel. & Tel. Corp.*, 756 F.2d 1161, 1180 (5th Cir. 1985) ("But such deficiencies do not normally justify dismissal of the suit on the merits and without leave to amend, at least not in the absence of special circumstances.").

Though this Court may dismiss Plaintiff's claim, "it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." *Hart*, 199 F.3d at 248 n.6 (citations omitted). Plaintiff's opposition to Defendants' motion demonstrates that the defect is not incurable, as it provides additional details on the circumstances surrounding the alleged fraudulent acts, and requests leave to amend in light of those facts. (Rec. Doc. 24 at 5-7). Further, Plaintiff has not yet amended its complaint. Thus, Plaintiff is permitted to amend its complaint within

fourteen (14) days of this Order, as previously stipulated in the Court's Scheduling Order. (Rec. Doc. 19 at 1).

Accordingly, **IT IS ORDERED** that Defendants' Motion to Dismiss Plaintiff's fraud claim is **DENIED without prejudice** and Plaintiff's request for leave to amend is **GRANTED**; Plaintiff must amend **within fourteen (14) days** of this Order and cure the noted deficiencies. Failure to timely and effectively do so will lead to dismissal with prejudice.

### B. Plaintiff's Miller Act Claim is not Facially Barred by the Statute of Limitations if Plaintiff Amends its Complaint to Properly Allege Fraud

"The rights created by the Miller Act are federal in nature and scope . . . and federal law controls the computation of the limitations period." *U. S. For Use & Ben. of Harvey Gulf Int'l Marine, Inc. v. Maryland Cas. Co.*, 573 F.2d 245, 247 (5th Cir. 1978). An action "must be brought no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action." 40 U.S.C. § 3133(b)(4). Nevertheless, the Miller Act is "limitational" or a "claim-processing rule" as opposed to a jurisdictional rule. *U.S. for Use of Am. Bank v. C.I.T. Const. Inc. of Texas*, 944 F.2d 253, 257 (5th Cir. 1991). As such, the statute of limitations under the Act may be subject to modification under equitable estoppel or equitable tolling. *United States v. Fid. & Deposit Co. of Maryland*, 813 F.2d 697, 700 (5th Cir. 1987). The

filing of a lawsuit in a federal jurisdiction is one way to toll the statute of limitations for a claim pursuant to the Miller Act. *Maryland Cas. Co.*, 573 F.2d at 247 (5th Cir. 1978).

Plaintiff filed its original claim 337 days after the extended completion date of the Project, making it timely. (Rec. Doc. 1 at 3, 5). That case was subsequently closed as a result of the Agreements between Plaintiff and Defendants. (Rec. Doc. 1 at 5). Later, on March 31, 2015, Plaintiff met with USACE and allegedly learned that its delay claim had been waived by Defendants. (Rec. Doc. 1 at 7-8). Suit was then filed in the instant action on June 25, 2015, eighty-six (86) days after "discovery" of the fraud. (Rec. Doc. 1).

If Plaintiff's fraud claim was dismissed, Plaintiff's Miller Act claim would also warrant dismissal under the current facts. As stated by Defendants, even "[g]iving Fisk every benefit of the doubt and assuming that the limitations period was suspended or tolled throughout the First Lawsuit and even after its dismissal, the absolute latest that the suspension of the limitations period would have ended was March 31, 2015[.]" (Rec. Doc. 16-1 at 10). As a result, even when considering the tolling by the lawsuit, 423 days elapsed between the extended completion date and the filing of the instant suit, a time period well in excess of the one year statute of limitations. In

the absence of another mechanism for equitable tolling or equitable estoppel, Plaintiff's claim would succeed.

However, this Court previously stated that Plaintiff should be granted leave to amend its fraud claim to permit Plaintiff to comply with the Federal Rules. If Plaintiff timely amends its complaint so that the fraud claim does not warrant dismissal, this claim will likewise not be subject to dismissal. Plaintiff's fraud claim, if successful, would essentially undermine and nullify the Agreements, which were the basis for this Court previously dismissing the former lawsuit. If this were to occur, this Court's dismissal would also be annulled. Under those circumstances, Plaintiff's Miller Act claim would not be barred by the statute of limitations, which was tolled after the elapsing of 337 days. The additional time between "discovery" of the fraud and filing of the instant lawsuit would be relevant only to determine if Plaintiff's fraud claim was timely.

Accordingly, **IT IS ORDERED** that Defendants' Motion to Dismiss Plaintiff's claim under the Miller Act is **DENIED without prejudice,** subject to the aforementioned deadline for amending the complaint. As previously stated, Plaintiff's failure to timely and effectively cure the noted deficiencies in its allegations of fraud will lead to dismissal with prejudice of that claim as well as Plaintiff's Miller Act claim.

### C. This Court Lacks Jurisdiction to Enforce the Settlement Agreement

"A District Court has the power to enforce summarily a settlement agreement reached in a case *pending* before it." *Mid-S. Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 389 (5th Cir. 1984) (citations omitted) (emphasis added). Such power does not exist when a case is no longer pending before the court. This is because "[e]nforcement of [a] settlement agreement . . . is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." *Hospitality House, Inc. v. Gilbert*, 298 F.3d 424, 430 (5th Cir. 2002) (quoting *Kokkonen v. Guardian Life Insurance Co.*, 511 U.S. 375, 378 (1994)). That basis is "ancillary jurisdiction, which recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them." *Kokkonen*, 511 U.S. at 378.

One of the purposes of ancillary jurisdiction is "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Id.* at 380. The "inherent power" to enforce a settlement, however, "is quite remote from what courts require in order to perform their functions." *Id.* As a result, ancillary jurisdiction will only be retained "if the parties' obligation to comply with the terms of the settlement agreement had been

made part of the order of dismissal – either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order." *Id.* at 381. A "judge's mere awareness and approval of the terms of [a] settlement agreement do not suffice to make them part of his order." *Id.*

On April 29, 2014, this Court filed its Order dismissing the previous lawsuit without prejudice and retaining jurisdiction for a period of sixty days. Order of Dismissal, *Fisk Electric Co. v. DQSI, LLC*, No. 13-6157 (E.D. La. Apr. 29, 2014), Rec. Doc. 10. On July 1, 2014, this Court extended that jurisdiction for a period of thirty days and on July 28, 2014, it again extended that jurisdiction for sixty days or until September 26, 2014. Order, *Fisk*, No. 13-6157 (E.D. La. July 1, 2014), Rec. Doc. 13; Order, *Fisk*, No. 13-6157 (E.D. La. July 28, 2014), Rec. Doc. 16. This Court exercised its jurisdiction to enforce settlement on September 8, 2014, when it adopted the Memorandum of Agreement, and again on September 17, 2014, when it ordered Defendants to submit the REA. Order, *Fisk*, No. 13-6157 (E.D. La. Sep. 8, 2014), Rec. Doc. 19; Order, *Fisk*, No. 13-6157 (E.D. La. Sep. 17, 2014), Rec. Doc. 20. Those orders are the final records appearing in the docket.

Consequently, it is clear that this Court did not intend to retain jurisdiction to enforce the settlement agreement past the

provided date of September 26, 2014. Though the Court may have approved the settlement, and enforced it prior to September 26, 2014, continuing ancillary jurisdiction to enforce settlement was not expressly retained in the Order of Dismissal, or any other Court order. As a result, the law does not support the Court enforcing settlement over a year after its jurisdiction to do so has ended. Accordingly,

**IT IS ORDERED** that Defendants' Motion to Enforce Settlement Agreement is **DENIED**.

### D. Summary Judgment is Inappropriate in Light of the Court's Holding on Defendants' Motion to Dismiss and Because Genuine Issues of Material Fact Exist

Defendants' alternatively argue that, as opposed to enforcement of the Agreements, the Defendants are entitled to entry of summary judgment dismissing Fisk's Complaint as a matter of law. This argument is based on the Agreements' validity and that Plaintiff knew or should have known of the release of its delay claim. As is explained below, summary judgment is not the appropriate remedy at this juncture.

### 1. The Validity of the Agreement is Contingent on Plaintiff's Fraud Claim

A successful fraud claim negates the validity of a settlement agreement. *See In re DEEPWATER HORIZON*, 786 F.3d at 362. Thus, discussion of the validity of the Agreements is premature. Because this Court has already granted Plaintiff's

request for leave to amend its complaint to properly allege fraud, assessing the essential components of a valid agreement might prove untimely. Such an analysis might be appropriate later in the course of these proceedings, but not prior to giving Plaintiff the opportunity amend its complaint and to pursue its fraud claim, if that claim exists.

It should be reemphasized that the language in the Agreements, which can be construed as a merger clause, does not bar a claim for fraud so as to demand review of the validity of the Agreements. As stated previously, parol evidence is generally admissible for the purposes of showing fraud. *See Scafidi*, 420 So. 2d at 1115. Further, merger clauses do not act as *per se* bars to the admissibility of parol evidence for the purpose of showing other agreements and/or representations between the parties. *Omnitech*, 11 F.3d at 1328. Consequently, this Court cannot rule as a matter of law that the Agreements are valid.

### 2. There is A Genuine Issue of Material Fact as to Whether Plaintiff Knew of the Release, but Plaintiff is Not Barred from Recovery as A Sophisticated Party

In order to grant summary judgment, the evidence must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the

nonmovant. *Anderson*, 477 U.S. at 248. Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb*, 139 F.3d at 536. With this standard in mind, this Court finds that there remain genuine issues of material fact.

Here, the parties argue whether Plaintiff knew that Defendant DQSI waived Plaintiff's delay claims. In support, Defendants' cite a letter dated December 10, 2013, from Fisk's Vice President, Pat Clyne. (Rec. Doc. 16-3 at 3). The letter, sent one year prior to the Mutual Release and Compromise of Claims, states in relevant part: "It appears from the documents that we received, that Fisk was foreclosed from seeking compensation from the [USACE] before Fisk and DQSI even began negotiations." (Rec. Doc. 3 at 3). Defendants conclude that this letter indicates that Plaintiff knew of the waiver of the delay claims.

To combat this, Plaintiff avers that "DQSI through its officers promised Mr. Clyne that the concerns expressed in his December 10, 2013 letter were incorrect." (Rec. Doc. 24 at 9). Plaintiff provides no support for this statement, but goes on to cite to the Mutual Release and Compromise of Claims, which specifically contemplates the recovery of additional funds from

the USACE. (Rec. Doc. 1-2 at 4). Plaintiff argues that, had Plaintiff known of the waiver by Defendant DQSI, such provisions would not have been included in the Agreements. This Court finds that the evidence, when considered with all reasonable inferences in the light most favorable to Plaintiff, establishes a genuine issue of material fact as to whether Plaintiff knew that the delay claims had been released.

Defendants further argue that Mr. Clyne obtained "one of the subject bilateral contract modifications" which indicated that Plaintiff's "delay claim ha[d] been released[.]" (Rec. Doc. 27 at 7; Rec. Doc. 27-1 at 3-9).[6] As such, Defendants conclude that Plaintiff did in fact know of the waiver of the delay claims. This Court is not convinced, however, that this document evidences the waiver of *all* delay claims. The Defendants' own language supports this conclusion, as Defendants assert that Mr. Clyne was "transmitted *one of* the subject bilateral contract modifications[.]" (Rec. Doc. 27 at 7) (emphasis added). At the very least, there is a genuine issue of material fact as to Plaintiff's knowledge.

---

[6] The bilateral contract modifications state, in relevant part:

> It is further understood and agreed that this adjustment constitutes compensation in full on behalf of the Contractor and its Subcontractors and Suppliers for all costs and markups directly or indirectly attributable for the change ordered, for all delays related thereto, for all extended overhead costs, and for performance of the change within the time frame stated.

(Rec. Doc. 27-1 at 9).

Defendants go on to contend that, if Mr. Clyne did not know what this bilateral contract modification meant, he at least should have; either in his own capacity as a professional or through the expertise of Plaintiff's other in-house counsel. (Rec. Doc. 27 at 7-8). Defendants similarly assert that, because Plaintiff was a sophisticated party with legal counsel, Plaintiff should have been able "to properly raise and investigate any concerns it purportedly had concerning the release of its delay claim." (Rec. Doc. 16-1 at 16). Defendants essentially conclude that Plaintiff should have known of the release, and is therefore precluded from claiming fraud in the settlement agreement. As stated previously, this Court rejects that the bilateral contract modification unequivocally indicates the release of all of Plaintiff's delay claims, or the delay claim in its entirety. As to Plaintiff's failure to investigate its concerns, that is addressed below.

The status or expertise of a party may preclude a fraud claim under some circumstances. *See, e.g.*, La. Civ. Code art. 1954 ("Fraud does not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill."). Here, Plaintiff should not be barred from such a claim at this juncture because the pleadings make clear that Plaintiff lacked necessary information that it was unable to obtain after

diligent efforts. The Complaint highlights that Plaintiff was not privy to conversations between DQSI and USACE, as Plaintiff could not "submit its delay claims directly to the USACE and [had to] trust its contractor to adequately present its delay claims." (Rec. Doc. 1 at 5). As such, Plaintiff had to rely on the representations of the Defendants. Nonetheless, Plaintiff indicates that it exhausted its resources in attempting to gain insight into the potential release of claims, through requesting information from the USACE under a Freedom of Information Act. (Rec. Doc. 16-3 at 3).

Though it appears that Plaintiff uncovered some information about the release of claims, this Court does not know what subsequent acts, if any, may have quelled Plaintiff's fears about the release. Regardless, Plaintiff still stipulated to the submission of the REA in the Agreements, which suggests that Plaintiff had some reasonable expectation of recovery. At this stage in the proceedings, Defendants have not conclusively shown that Plaintiff should have known of the release of claims and further discovery should be conducted to determine why Plaintiff was unaware of this fact. Nevertheless, this Court does not find that Plaintiff is precluded from recovery as a result of its status as a "sophisticated" party as Defendant avers.

Finally, Defendants argue that the correspondence Plaintiff received from the USACE on February 13, 2015 makes clear that

Defendant DQSI did not waive all of Plaintiff's claims, as it merely precludes claims for delay damages. (Rec. Doc. 27 at 4; Rec. Doc. 1-3 at 2).[7] However, Plaintiff's Complaint is based on the fact that Defendant DQSI "waived [Plaintiff's] right to seek additional compensation for *delay damages* from the USACE." (Rec. Doc. 1 at 6) (emphasis added). The Court is puzzled as to what Defendants seek to prove, as Defendants have in essence pointed out that Plaintiff's Complaint is supported by the letter. While Defendants state that the letter "establishes that DQSI did not 'waive any rights [Fisk] had to submit **an** REA' as suggested by Fisk[,]" the Court does not accept that this is Plaintiff's argument. (Rec. Doc. 27 at 4) (emphasis in original). Rather, the Court relies on Plaintiff's allegations in the Complaint.

Accordingly, for the reasons above, **IT IS ORDERED** that Defendants' Motion for Summary Judgment is **DENIED**.

## V.     CONCLUSION

As stated above, Defendants' Motion to Dismiss and Motion for Summary Judgment must ultimately be denied in order to provide Plaintiff the opportunity to amend its complaint. Defendants' Motion to Enforce Settlement must also be denied because the Court lacks the authority to enforce such an agreement, irrespective of its validity.

---

[7] Defendants' argument stems from Plaintiff's Opposition, in which Plaintiff states that "DQSI had previously waived any rights it had to submit an REA." (Rec. Doc. 24 at 5).

Accordingly, **IT IS ORDERED** that:

(1)   Defendants' Motion to Dismiss is **DENIED without prejudice;**

(2)   Plaintiff's request for leave to amend is **GRANTED;** Plaintiff must amend **within fourteen (14) days** of this Order and cure the noted deficiencies and failure to timely and effectively do so will lead to dismissal with prejudice;

(3)   Defendants' Motion to Enforce Settlement Agreement is **DENIED;** and

(4)   Defendants' Motion for Summary Judgment is **DENIED.**

New Orleans, Louisiana, this 2nd day of November, 2015.


UNITED STATES DISTRICT JUDGE