```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

FISK ELECTRIC COMPANY                                    CIVIL ACTION

VERSUS                                                   NO. 15-2315

DQSI, LLC AND WESTERN                                    SECTION "B"(3)
SURETY COMPANY

## ORDER AND REASONS

**I.   NATURE OF MOTION AND RELIEF SOUGHT**

Before the Court is Defendants', DQSI, L.L.C. ("DQSI") and Western Surety Company ("Western") "Motion for Summary Judgment" (Rec. Doc. 45) and Plaintiff's, Fisk Electric Company ("Fisk"), opposition thereto (Rec. Doc. 49). Additionally, Defendants have filed a reply to Plaintiff's Opposition (Rec. Doc. 64). For the reasons set forth below, **IT IS ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED.**

**II.  FACTS AND PROCEDURAL HISTORY**

Fisk contracted to perform electrical work on July 29, 2010 with DQSI, the prime contractor with the United States Army Corps of Engineers ("USACE"), for a storm proofing project (the "Project"). (Rec. Doc. 1 at 3). Prior to that date, but in contemplation of the Project, Western issued a Miller Act payment bond on the Project on behalf of DQSI. (Rec. Doc. 1 at 3). The original completion date for the Project under Fisk and DQSI's contract was July 12, 2011, with a maximum completion date of

August 1, 2011; however, because of significant delays that were not caused by Fisk, the completion date was prolonged another 464 days. (Rec. Doc. 1 at 3).

Under the terms of Fisk's contract with DQSI, Fisk was permitted to assert monetary claims for unforeseen delays not caused by the subcontractor. (Rec. Doc. 1 at 3). As a result of the delayed completion date, Fisk alleges that it incurred significant additional expenses, which it invoiced to DQSI, but was not paid. (Rec. Doc. 1 at 4). Fisk subsequently sent a demand letter to DQSI and Western on March 27, 2013, and thereafter met with DQSI on several occasions in 2013 in an effort to resolve the claims amicably. (Rec. Doc. 1 at 5).

After failure to resolve Fisk's claims, Fisk filed suit against DQSI and Western pursuant to 40 U.S.C. § 3131, et seq. (the "Miller Act") and for breach of contract, in the action entitled *Fisk Electric Co. v. DQSI, L.L.C.*, No. CV-13-6157 (E.D. La. filed Oct. 15, 2013). Fisk and DQSI mediated this case on April 17, 2014 and entered into the Memorandum of Agreement, which was later enforced by this Court on September 17, 2014. (Rec. Doc. 1 at 5, 7; Rec. Doc. 1-1). In addition to other conditions for Fisk releasing its claims, the parties agreed that DQSI would submit a Request for Equitable Adjustment ("REA") to the USACE for the delay damages alleged by Fisk, as Fisk would not be permitted to submit

2

its claims directly as a subcontractor, but must rely on its contractor to adequately present them. (Rec. Doc. 1 at 5).

Fisk alleges that the ability to pursue the delay damages from USACE was imperative in settling, and settlement would not have been agreed upon in the absence of the promise by DQSI to submit the REA. (Rec. Doc. 1 at 6). Fisk alleges that it confronted DQSI prior to filing the original lawsuit and again at mediation regarding concerns that DQSI may have waived its rights to seek additional compensation from the USACE for delays, but relied on DQSI's representations that it had not. (Rec. Doc. 1 at 6). Fisk prepared its REA with supporting documentation pursuant to the Memorandum of Agreement and DQSI ultimately, pursuant to this Court's order enforcing that agreement, submitted an REA to the USACE, which may or may not be identical to what Fisk prepared. (Rec. Doc. 1 at 6-7).[1] Thereafter, Fisk and DQSI finalized their settlement with the Mutual Release and Compromise of Claims, executed on December 11, 2014. (Rec. Doc. 1 at 7; Rec. Doc. 1-2).

On February 13, 2015, Fisk received correspondence from the USACE via DQSI to suggest that, contrary to the alleged assurances from DQSI that it had not already received delay payment that would involve Fisk's delay claims, all claims for the delays had been paid and the rights of DQSI's subcontractors had been waived. (Rec.

---

[1] Fisk alleges that it has not seen a copy of the REA that DQSI submitted to the USACE. (Rec. Doc. 1 at 7).

Doc. 1 at 7; Rec. Doc. 1-3). Fisk subsequently met with USACE and DQSI on March 31, 2015, and alleges that USACE made clear that any claims for damages related to project delays had previously been paid and addressed in connection with the original contract modifications requested by DQSI such that Fisk's rights to seek additional compensation had been waived. (Rec. Doc. 1 at 8). Fisk alleges that, at the time of mediation and settlement, DQSI knew that it had waived Fisk's rights but assured Fisk that it had not. (Rec. Doc. 1 at 8). Fisk further alleges that it agreed to settle based on these representations. (Rec. Doc. 1 at 8).

On June 25, 2015, Fisk filed a law suit seeking rescission of the release on the basis of fraud and damages for breach of contract, and additionally adopted all of the claims from its original lawsuit. (Rec. Doc. 1 at 2). Jurisdiction in this matter is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332 and is also proper pursuant to 28 U.S.C. § 1352 and 28 U.S.C. § 1367(a), insomuch as Fisk requests relief under the Miller Act and all state law claims arise out of the same case or controversy. (Rec. Doc. 1 at 2).

Defendants filed a Motion to Dismiss, a Motion to Enforce Settlement and a Motion for Summary Judgment. In this Court's November 2, 2015 Order and Reasons (Rec. Doc. 31), all three of the Defendants' motions were denied. The Plaintiffs filed an Amended Complaint on November 17, 2015 and the Defendants'

4

initiated the instant matter by filing a motion for summary judgment on December 6, 2016.

### III. FACTUAL AND LEGAL FINDINGS

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas*, 139 F.3d 532, 536 (5th Cir. 1998).

The moving party bears the initial responsibility of informing the district court of the basis for its motion. *Celotex*, 477 U.S. at 323. The movant must point to "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (citing Fed. R. Civ. P. 56). If and when the movant carries this burden, the nonmovant must then go beyond the pleadings and use affidavits,

5

depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[W]here the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. . . . Only when 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party' is a full trial on the merits warranted." *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616 (5th Cir. 1994). Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993).

Defendants argue that they are entitled to summary judgment because the Plaintiff cannot demonstrate that its consent to the Settlement Agreement was vitiated by fraud. The enforceability or validity of a settlement agreement is determined by federal law when the substantive rights and liabilities of the parties derive from federal law. *Mid-S. Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 389 (5th Cir. 1984) (citations omitted). Because the claims in this case are premised on the Miller Act, federal law governs the validity of the Agreements and thus any fraud claim that might invalidate them.

When a settlement agreement is induced by fraud, a court may set it aside and "[t]he essential elements of fraudulent inducement into a settlement are no different from any action on fraud." *In re DEEPWATER HORIZON*, 786 F.3d 344, 362 (5th Cir. 2015) (quoting 15B Am. Jur. 2d Compromise and Settlement § 32 (2014)). Accordingly, Plaintiff must prove: "(1) a misrepresentation of a material fact; (2) made with intent to deceive; and (3) causing justifiable reliance with resultant injury." *Culotta v. Sodexo Remote Sites P'ship*, 864 F. Supp. 2d 466, 473 (E.D. La. 2012).

In order to grant summary judgment, the evidence must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson*, 477 U.S. at 248. Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb*, 139 F.3d at 536. With this standard in mind, this Court finds that there are no genuine issues of disputed material facts regarding an essential element of the fraud claim.

The Plaintiff cannot demonstrate that there was justifiable reliance on the Defendants' representations that form the basis of the First Amended Complaint. Defendants argue that the Plaintiff

7

knew that that the Settlement Agreement waived the Plaintiff's delay claims. Defendants' cite a letter dated December 10, 2013, from Fisk's Vice President, Pat Clyne. (Rec. Doc. 45-2). The letter, sent one year prior to the Mutual Release and Compromise of Claims, states in relevant part: "It appears from the documents that we received, that Fisk was foreclosed from seeking compensation from the [USACE] before Fisk and DQSI even began negotiations." (Rec. Doc. 45-2).

The letter from the FISK vice president is evidence that the Plaintiff was aware of the waiver of the delay claims and therefore could not have justifiably relied on the Defendants representations. Furthermore, the Plaintiff admitted that they had also received a copy of the contract modifications and amendments in connection with a FOIA request (Rec. Doc. 49 at 2 and Rec. Doc. 45-4). The modifications themselves found in Exhibit C (Rec. Doc. 45-4) should have informed the Plaintiff that the delay claims were waived before they entered into the Settlement Agreement. Plaintiff argues that these documents were unsigned and incomplete (Rec. Doc. 49 at 3). However, even unsigned and incomplete documents that failed to include delay claims should have put the Plaintiff on notice that they were waived. If the Plaintiff was aware that the delay claims were waived, Plaintiff could not have justifiably relied on any representation by the

8

Defendants or make their Settlement Agreement contingent on such remedy.

In addition, the plain language of the Settlement Agreement demonstrates that the Plaintiff should not have justifiably relied on any outside assurances or promises that were not memorialized in the Settlement Agreement. The Settlement Agreement itself expressly states that it contains the "entire agreement between the parties" and that "the parties agree that no promise, inducement or agreement not expressed herein has been made to any of the Parties" (Rec. Doc. 1-2). Based on the facts of this case, Plaintiff's reliance on representations not included in the Settlement Agreement does not constitute grounds for fraud under federal law.

Finally, summary judgment is appropriate because "where the allege misrepresentation relates to facts which could have been discovered upon investigation or inspection, and where the party alleging fraud has been granted the opportunity to conduct such an investigation or inspection before entering the contract, that party cannot subsequently complain that his consent was vitiated by fraud." *Smoothie King Franchises, Inc. v. Southside Smoothie & Nutrition Ctr., Inc.*, 2012 U.S. Dist. LEXIS 67620, at*30(E.D. La. May 14, 2012) aff'd, 516 Fed.Apex. 362 (5th Cir. 2013). Even fraud in the inducement claims based on allegedly intentional misrepresentations have been deemed non-viable where a party could

have investigated the terms of the agreement. *Am. Transp. v. Surveyors*, Case No. 15-3971, 2016 U.S. Dist. LEXIS 109617, at*8-9(E.D. La. Aug. 17, 2016). Plaintiff was a sophisticated party with legal counsel, Plaintiff should have been able to properly raise and investigate any concerns it purportedly had concerning the release of its delay claim. The copy of the modifications, even if they were unsigned, should have prompted an investigation as to whether delay damages had been waived.

Furthermore, Plaintiff argues that its status as a subcontractor meant that it could not communicate directly with the Corps and had no choice but to rely on the representations of the Defendants. Plaintiff argues that it could not call the Corps in order to verify whether their ability to submit delay claims had been foreclosed. However, if there was doubt regarding the terms of the Settlement Agreement, the Plaintiffs should have continued litigating the case. Plaintiff's lack of investigation into the terms of their Settlement Agreement cannot be the basis for a fraud claim. In light of very convincing evidence of fraud by movant, we were unable to find an exception that would allow excusing opponent's above noted deficiencies.

New Orleans, Louisiana, this 10th day of January, 2017.

_____
SENIOR UNITED STATES DISTRICT JUDGE

10