UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FISK ELECTRIC COMPANY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-2315** |
| **DQSI, LLC AND WESTERN SURETY COMPANY** | **SECTION "B"(3)** |

## ORDER AND REASONS

### I. NATURE OF MOTION AND RELIEF SOUGHT

Before the court is DQSI's "FRCP 54 Motion For Attorney Fees and Non-taxable Costs" (Rec. Doc. 78) and Fisk's "Memorandum in opposition to Defendants' FRCP 54 Motion For Attorney Fees and Non-taxable Costs" (Rec. Doc. 80) and "Reply Memorandum In Support of FRCP 54 Motion For Attorney Fees And Non-Taxable Costs" (Rec. Doc.86). For the reasons set forth below, **IT IS ORDERED** that Defendants' Motion for Attorneys' Fees is **DENIED**.

### II. FACTS AND PROCEDURAL HISTORY

Fisk contracted to perform electrical work on July 29, 2010 with DQSI, the prime contractor with the United States Army Corps of Engineers ("USACE"), for a storm proofing project (the "Project"). (Rec. Doc. 1 at 3). Prior to that date, but in contemplation of the Project, Western issued a Miller Act payment bond on the Project on behalf of DQSI. (Rec. Doc. 1 at 3). The original completion date for the Project under Fisk and DQSI's contract was July 12, 2011, with a maximum completion date of

August 1, 2011; however, because of significant delays that were not caused by Fisk, the completion date was prolonged another 464 days. (Rec. Doc. 1 at 3).

Under the terms of Fisk's contract with DQSI, Fisk was permitted to assert monetary claims for unforeseen delays not caused by the subcontractor. (Rec. Doc. 1 at 3). As a result of the delayed completion date, Fisk alleges that it incurred significant additional expenses, which it invoiced to DQSI, but was not paid. (Rec. Doc. 1 at 4). Fisk subsequently sent a demand letter to DQSI and Western on March 27, 2013, and thereafter met with DQSI on several occasions in 2013 in an effort to resolve the claims amicably. (Rec. Doc. 1 at 5).

After failure to resolve Fisk's claims, Fisk filed suit against DQSI and Western pursuant to 40 U.S.C. § 3131, et seq. (the "Miller Act") and for breach of contract, in the action entitled *Fisk Electric Co. v. DQSI, L.L.C.*, No. CV-13-6157 (E.D. La. filed Oct. 15, 2013). Fisk and DQSI mediated this case on April 17, 2014 and entered into the Memorandum of Agreement, which was later enforced by this Court on September 17, 2014. (Rec. Doc. 1 at 5, 7; Rec. Doc. 1-1). In addition to other conditions for Fisk releasing its claims, the parties agreed that DQSI would submit a Request for Equitable Adjustment ("REA") to the USACE for the delay damages alleged by Fisk, as Fisk would not be permitted to submit

its claims directly as a subcontractor, but must rely on its contractor to adequately present them. (Rec. Doc. 1 at 5).

Fisk alleges that the ability to pursue the delay damages from USACE was imperative in settling, and settlement would not have been agreed upon in the absence of the promise by DQSI to submit the REA. (Rec. Doc. 1 at 6). Fisk alleges that it confronted DQSI prior to filing the original lawsuit and again at mediation regarding concerns that DQSI may have waived its rights to seek additional compensation from the USACE for delays, but relied on DQSI's representations that it had not. (Rec. Doc. 1 at 6). Fisk prepared its REA with supporting documentation pursuant to the Memorandum of Agreement and DQSI ultimately, pursuant to this Court's order enforcing that agreement, submitted an REA to the USACE, which may or may not be identical to what Fisk prepared. (Rec. Doc. 1 at 6-7).[1] Thereafter, Fisk and DQSI finalized their settlement with the Mutual Release and Compromise of Claims, executed on December 11, 2014. (Rec. Doc. 1 at 7; Rec. Doc. 1-2).

On February 13, 2015, Fisk received correspondence from the USACE via DQSI to suggest that, contrary to the alleged assurances from DQSI that it had not already received delay payment that would involve Fisk's delay claims, all claims for the delays had been paid and the rights of DQSI's subcontractors had been waived. (Rec.

---

[1] Fisk alleges that it has not seen a copy of the REA that DQSI submitted to the USACE. (Rec. Doc. 1 at 7).

Doc. 1 at 7; Rec. Doc. 1-3). Fisk subsequently met with USACE and DQSI on March 31, 2015, and alleges that USACE made clear that any claims for damages related to project delays had previously been paid and addressed in connection with the original contract modifications requested by DQSI such that Fisk's rights to seek additional compensation had been waived. (Rec. Doc. 1 at 8). Fisk alleges that, at the time of mediation and settlement, DQSI knew that it had waived Fisk's rights but assured Fisk that it had not. (Rec. Doc. 1 at 8). Fisk further alleges that it agreed to settle based on these representations. (Rec. Doc. 1 at 8).

On June 25, 2015, Fisk filed a law suit seeking rescission of the release on the basis of fraud and damages for breach of contract, and additionally adopted all of the claims from its original lawsuit. (Rec. Doc. 1 at 2). Jurisdiction in this matter is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332 and is also proper pursuant to 28 U.S.C. § 1352 and 28 U.S.C. § 1367(a), insomuch as Fisk requests relief under the Miller Act and all state law claims arise out of the same case or controversy. (Rec. Doc. 1 at 2).

Defendants filed a Motion to Dismiss, a Motion to Enforce Settlement and a Motion for Summary Judgment. In this Court's November 2, 2015 Order and Reasons (Rec. Doc. 31), all three of the Defendants' motions were denied. The Plaintiffs filed an Amended Complaint on November 17, 2015 and the Defendants'

4

initiated the instant matter by filing a motion for summary judgment on December 6, 2016. This Court issued a Judgment in favor of the Defendant (Rec. Doc. 77). Defendant filed the instant motion in order to recover attorneys' fees', taxable and non-taxable costs (Rec. Doc. 78).

**III. LEGAL AND FACTUAL FINDINGS**

Federal rule of Civil Procedure 54 provides in pertinent part: "A claim for attorneys' fees and related nontaxable expenses must be made by motion unless the substantive law requires those feeds be proved at trial as an element of damages. Unless a statute or a court order provides otherwise, the motion must be: (i) filed no later than 14 days after the entry of judgment; (ii) specify the judgment and statue, rule or other grounds entitling the movant to the award; (iii) state the amount sought or provide a fair estimate of it; and (iv) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made. Local Civil Rule 54.2 of the United States District Court for the Eastern District of Louisiana provides: "In all cases in which a party seeks attorneys' fees, the party must submit to the court a verified, contemporaneous report reflecting the date, time involved and nature of the services performed."

DQSI's Motion for Attorneys' fees should be denied given the facts of this case and therefore this Court will not analyze the propriety of the requested fee amounts. Fisk contends that the

agreement that governs the instant controversy is the Mutual Release and Compromise of Claims Agreement (Rec. Doc. 1-2). The validity of this agreement was the subject of the previously adjudicated Motion for Summary Judgment (Rec. Doc. 76). Fisk argues that when this Court granted DQSI's Motion for Summary Judgment, by operation of law, the Mutual Release agreement was reinstated. Fisk contends that the Mutual Release is a complete resolution of all claims does not allow for an award of attorneys' fees because the settlement agreement extinguished all claims between the two parties (Rec. Doc. 1-2). DQSI argues that Fisk's lawsuit against them was based on a breach of contract, the subcontract between Fisk and DQSI, and not the Mutual Release contract. DQSI argues that the subcontract entitles them to attorneys' fees even though the Mutual Release and Compromise of Claims agreement may not.

Nonetheless, this Court agrees with Fisk's contention. Even though the lawsuit in question was based on an alleged violation of the subcontract, which allowed for attorneys' fees, the Court's Summary Judgment decision affirmed the validity of the parties previously reached settlement agreement. The subcontract was material only insofar that it had a bearing on the parties' Mutual Release agreement and whether or not there was a legally sufficient fraud claim to invalidate the contract. The operative legal agreement that currently governs relationship between Fisk and DQSI is the Mutual Release and Compromise of Claims, not the

6

allegedly breached subcontract (Rec. Docs. 1-1 and 1-2, 76). The Mutual Release and Compromise of Claims is the controlling agreement and precludes DQSI from entitlement to attorneys' fees. The subcontract is not the operative legal document and its provisions are immaterial. The Court's Order and Reasons did not reinstate the subcontract between the parties, it upheld the validity and reinstated the previously disputed settlement agreement. DQSI's reliance on a subcontract in order to obtain attorneys' fees is unpersuasive when this Court has ruled on a contemporary settlement agreement whose terms address all claims.

Furthermore, DQSI's contention that it is entitled to attorneys' fees because Fisk brought a baseless lawsuit is without merit. DQSI argues that Fisk's claims were baseless because this Court granted its Motion for Summary Judgment (Rec. Doc. 76). However, Fisk argues that their lawsuit was neither baseless nor vexatious, as this Court found "very convincing evidence of fraud" by DQSI (Rec. Doc. 76). This Court agrees with Fisk and finds that DQSI should not be entitled to attorneys' fees and costs based on this ground. Even though the law of this Circuit led to a favorable result for DQSI in an earlier proceeding, as this Court previously held, there is "very convincing evidence of fraud" by DQSI (Rec. Doc. 76). Based on this Court's review of the record, this lawsuit was not baseless or vexatious and DQSI should not be awarded attorneys' fees based on equity.

Moreover, it is within the power of the district court to determine award costs to a prevailing party. *Sigur v. Emerson Process Mgmt.,* Case No.05-1323, 2008 U.S. Dist. LEXIS 106617 at*4 (M.D. La. Feb. 21, 2008). Moreover, the district court can choose to refuse to award attorneys' fees based on the facts of a case. *Id.* Courts may decide to excuse a losing party from paying costs for several reasons. *Pacheco v. Mineta*, 448 F.3d 783, 794 (5th Cir. 2006); *see also Lightfoot v. Hartford Fire Ins. Co., Case No.07-4833, 2012 U.S. Dist. LEXIS 175247 at*11 (E.D. La. Dec. 11, 2012)*. If the court excuses the losing party from paying costs, it must explain its reasons for doing so. *Pacheco*, 448 F.3d at 794.

The Fifth Circuit considers five factors in determining whether to deny attorneys' fees: "(1) The losing party's limited financial resources; (2) Misconduct by the prevailing party; (3)Close and difficult legal issues presented; (4) Substantial benefit conferred by the public; (5)The prevailing party's enormous financial resources. *Id.* This Court denies DQSI attorneys' fees in this context because of a "substantial benefit conferred by the public." The public benefits from not rewarding a party where strong evidence indicates fraudulent behavior with another business. The law of this Circuit required this Court to rule in favor of DQSI in an earlier proceeding. However, this Court will not award attorney's fees to a party where there is convincing evidence of questionable business practices that are against the

public's interest. Companies should engage in fair business dealings with other companies. Despite the legal insufficiency of the Fisk's fraud claims against DQSI, it is clear that something ran afoul in their dealings. This Court had no choice but to allow DQSI to prevail in a previous lawsuit. However, this Court will not condone the recovery of attorneys' fees in reward for highly suspect business behavior with Fisk. Attorneys' fees are not appropriate in this case for all of the previously mentioned reasons.

New Orleans, Louisiana, this 11th day of July, 2017.

_____
SENIOR UNITED STATES DISTRICT JUDGE